Ernesto **LEOS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 39829.

Court of Criminal Appeals of Texas.

Nov. 23, 1966.

Rehearing Denied Jan. 18, 1967.

Albert Armendariz, El Paso, for appellant.

Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

WOODLEY, Judge.

The offense is assault with intent to murder with malice; the punishment, 10 years.

The case was tried and notice of appeal was given prior to January 1, 1966.

■ The statement of facts reflects that appellant Ernesto Leos, Frank Garcia, Richard Perez and Sammie Soreano were students at the Mountain View School for Boys where Howard Golden was an attendant.

Golden, the injured party, testified that at about 2:45 P.M. on May 10, 1965, he was at his desk in "Dorm 12" where he had under his supervision about 24 boys, about half of whom were Spanish boys, including the four above named.

Golden testified that when the boys got ready to go outside he had them line up and just as they got in line Frank Garcia said "Let's get him now," and struck him with a chair.

About the same time, Sammie Soreano stabbed him with a screwdriver that had been sharpened and appellant was cutting at him with a wood chisel, and as he dove toward the front door, appellant had him by the shirt and said: "I'll kill you, you son-of-a-bitch," and threw a long wood chisel which went down his side "just like a bullet * * *."

The four boys were soon found standing on the football field. Sammie Soreano had a screwdriver in his hand which "had been filed down into a sharp point." Richard Perez had a wood chisel in his hand; another was found on the ground outside the dormitory door; another in the dormitory and a fourth on the route between the dormitory and the football field where ap-

pellant said he took off his overalls and dropped it.

The wound found on Mr. Golden was described as a stab wound in the back near the heart, which pushed inward. It appeared to have been made with a blunt and narrow instrument, and was the type of wound that could have been inflicted by an instrument such as the sharpened screwdriver introduced in evidence as that found in the hand of Sammie Soreano. Such type of wound could have resulted in death.

Richard Perez, called as a witness for the defense, testified on cross-examination:

"Q. Now you all planned to cut up Mr. Golden, that's what you told me you planned to do, you planned to cut him up and you told me you were scared he might get killed with that screwdriver, didn't you?

"A. Yes.

"Q. Didn't you tell me that?

"A. Yes.

"Q. And this is the screwdriver that Sammie Soreano had, wasn't it?

"A. Yes.

"Q. Look at it and see.

"A. Yes, this is the screwdriver here.

"Q. Where did that screwdriver get that blade on it, you know, don't you?

"A. Yes, he told me he sharpened it.

"Q. Sharpened it up to stick into somebody, didn't he?

"A. Yes.

\* \* \* \* \* \*

"Q. You started planning to do this on Saturday and this happened on Monday, didn't it?

"A. Yes sir.

"Q. And you started planning to cut him up and to stab him the Saturday before it happened, isn't that right?

"A. Yes sir.

"Q. And so you four boys had about three or four days to think about this thing, didn't you?

"A. Yes sir.

"Q. And you still went through with it, didn't you?

"A. Yes.

"Q. You threw one of these chisels at him, didn't you?

"A. Yes.

"Q. And all you boys had stolen these chisels out of the wood shop for that purpose, to cut him up with, didn't you?

"A. Yes sir."

\* \* \* \* \* \*

On re-cross examination he testified:

"Q. You knew that if the screwdriver, if it was stuck in him it could kill him, didn't you?

"A. Yes sir."

Appellant testified on cross-examination:

"Q. Well, let me ask you this, you all planned, you, and Sammie Soreano and Frank Garcia and Richard Perez, planned on cutting Mr. Golden up, didn't you? Now just tell the jury?

"A. Yeah.

\* \* \* \* \* \*

"Q. \* \* \* you planned with Sammie Soreano, and with Perez and with Garcia to jump Mr. Golden and cut him up?

"A. You want me to tell you what we had planned?

"Q. Yes, that's what I want you to tell me.

"A. Okay. That's what you should ask me for. What we had planned, he—

Frank said he was gonna hit him with the chair and Sammie said he was going to cut him up a little, so I didn't think he was going to stab or nothing like that, and then we decided to get the chisels so we could be in it too, so they could take us out, that's what we had planned."

We find the evidence sufficient to sustain the jury's verdict.

■ Appellant's first complaint relates to "the reference to the race of the accused and the other boys who allegedly attacked Mr. Golden" in the following direct examination of the state's witness, Howard Golden.

"Q. Now, with reference to race, what type or what race are these boys that I have just named?

"A. Spanish boys, all four of them.

"Q. Now in your Company there, did you have—were they all Spanish boys?

"A. No sir, we have—at the time we had only white boys and Spanish boys.

"Q. About what percentage of each were they?

"A. About half, I imagine.

"Q. About half and half?

"A. Yes sir.

"Q. Now you mentioned to the jury that you had an unusual experience at about 2:45 P.M. on that date?

"A. Yes sir.

"Q. What was that unusual experience?

"A. I was attacked by four Spanish boys.

"Q. Who were the four Spanish boys that attacked you?

"A. Frank Garcia, Ernesto Leos, Richard Perez, and—

"Q. Was it Sammie Soreano?

"A. Sammie Soreano, yes."

The questions were asked and answered without objection and reflect no prejudice or attempted prejudice by reason of race or national origin.

■ The remaining ground upon which reversal is sought is predicated upon the fact that appellant was in the State School for Boys at Gatesville as a delinquent child pursuant to the order of a Juvenile Court on May 10, 1965, when the offense was committed, and was confined in the "lock-up" or "jail" at the school until June 9, 1965 when it was decided that "higher state authorities should also be allowed to exact punishment for that crime."

The record reflects that appellant was 17 years of age at the time the offense was committed, and was subject to punishment therefor as an adult.

Appellant's claim of double jeopardy is without merit. Wood v. State, 171 Tex.Cr. R. 307, 349 S.W.2d 605.

The judgment is affirmed.

OPINION
ON APPELLANT'S MOTION
FOR REHEARING

DICE, Judge.

In his motion for rehearing, error is urged by appellant, for the first time, to the court's action in permitting the state's witness, Jimmy Christian, to relate certain statements made by appellant after he and his companions were apprehended on the football field.

■ Over appellant's objection that he was under arrest when the statements were made, the witness was permitted to testify that appellant told him where to find one of the chisels used in the assault and he also said "that they wanted to kill Mr.

Golden and go to the penitentiary."

We perceive no error in the admission of the testimony.

Appellant's statement which led to the recovery of one of the weapons used in the crime was admissible as an oral confession, under Art. 727, Vernon's Ann.C.C.P., which was in force and effect at the time of the trial. Edmond v. State, 169 Tex.Cr.R. 637, 336 S.W.2d 946.

The statement of appellant that he and his companions wanted to kill Golden was also admissible as a part of the oral confession. Smith v. State, 166 Tex.Cr.R. 614, 317 S.W.2d 539; Riley v. State, 168 Tex.Cr. R. 41, 328 S.W.2d 306.

Art. 38.22 of the 1965 Code of Criminal Procedure, governing confessions of an accused, has no application to the admission of appellant's oral confession in evidence at a trial held prior to January 1, 1966, the effective date of the present code.

The record does not reflect a denial of due process of law to appellant, under the United States Constitution, in admitting the oral confession in evidence.

We have again reviewed the record in the light of appellant's contention that the reference to him and his companions, in the testimony, as "Spanish boys" deprived him of a fair and impartial trial and due process of law, and remain convinced that no reversible error is presented. As pointed out in our original opinion, there were no objections to the questions and answers which referred to appellant and his companions as being of the Spanish race. The voice inflection or manner of speech referred to by counsel is of course not reflected in the writing which constitutes the record on appeal. There is no showing of any bad faith on the part of either state's counsel or the witness in referring to appellant's race or national origin.

Remaining convinced that a proper disposition was made of the case on original submission, the motion is overruled.